UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-MJ-06598-AOV

UNITED STATES OF AMERICA,

v.

ELIANDE TUNIS,

    Defendant.
_____/

**DETENTION ORDER**

    On November 5, 2021, this Court held a hearing pursuant to Title 18 U.S.C. § 3142(f) to determine whether Defendant Eliande Tunis ("Defendant") should be detained prior to trial. The Government sought to detain Defendant on the grounds that she presents both a danger to the community and a risk of flight. *See* 18 U.S.C. § 3142(e). Having considered the factors enumerated in 18 U.S.C. § 3142(g), the Government's proffer, the testimony of the law enforcement agent, the facts contained in the Pretrial Services Report ("PSR"), and the arguments of counsel, the Court finds by clear and convincing evidence that the Defendant poses a danger to the community. Therefore, this Court orders that Defendant be detained prior to trial and until the conclusion thereof.

    In accordance with the provisions of 18 U.S.C. § 3142(i)(1), this Court makes the following findings of fact and statement of reasons for the detention:

    1.    Defendant is charged by Complaint with: (i) shipping firearms and ammunition to Haiti, in violation of the Export Control Reform Act, 50 U.S.C. § 4811(2) ("ECRA"); (ii) smuggling of firearms to Haiti, in violation of 18 U.S.C. § 554(a); and (iii) conspiracy to violate ECRA, in violation of 18 U.S.C. § 371. If convicted, Defendant faces a possible maximum

statutory sentence of 20 years in prison on the ECRA charge, 10 years in prison on the smuggling charge, and up to 5 years on the conspiracy charge.

  2. The Government asserts that it is entitled to a rebuttable presumption that detention is warranted because the alleged offenses are felonies that involve the possession or use of firearms, destructive devices, or other dangerous weapons, pursuant to 18 U.S.C. § 3142(f)(1)(E). Defendant did not object to the application of the presumption nor did Defendant present any evidence to rebut the presumption. In any event, even in the absence of the presumption, the undersigned finds that the Government has met its burden of showing by clear and convincing evidence that Defendant is a danger to others and the community.

  3. The weight of the Government's evidence against Defendant is substantial. At the detention hearing, the Government proffered evidence and the law enforcement agent testified that:

  a. 400 Mawozo is a Haitian criminal organization that operates east of Port-au-Prince, Haiti. On or about October 16, 2021, 400 Mawozo kidnapped 16 U.S. citizens who were traveling near Port au Prince, including five children.

  b. Coconspirator 1 is a Haitian national and a leader of 400 Mawozo. Coconspirator 1 is incarcerated, but still serves as a leader in the organization and directs operations from prison using an unmonitored cellular phone.

  c. Individual 2 is a Haitian national and a leader of 400 Mawozo. Starting around October 18, 2021, Individual 2 appeared on social media videos, including on YouTube and Facebook, stated his name, and declared himself to be a leader of 400 Mawozo. More specifically, on October 22, 2021, Individual 2 appeared on a Facebook video from a local

funeral for gang members who had been killed and announced his intention to kill the American hostages if he did not receive the ransom money ($1 million per hostage).

d.     Defendant is a U.S. citizen, born in Haiti. Defendant resides in Florida and, as described below, is a self-professed member of 400 Mawozo. As further described below, Defendant and her co-defendants purchased weapons and ammunition in the United States and shipped them to 400 Mawozo in Haiti. Defendant used straw purchasers and falsified ATF paperwork to purchase these firearms and ammunition in the U.S., which she and her co-defendants then smuggled into Haiti in shipping barrels.

e.     During the investigation, law enforcement searched Defendant's cell phone pursuant to a search warrant. The search revealed numerous texts and messages between Defendant, Coconspirator 1, and Individual 2. In these communications, Defendant pledged allegiance to 400 Mawozo. For example, in an October 19, 2021 text to Coconspirator 1, Defendant stated on WhatsApp (in Creole): "Don't worry about it, stay calm. You know we are 400 Mawozo and we are strong. Keep a cool head." On the same date, Defendant sent an audio file to Coconspirator 1 on WhatsApp (in Creole) stating, "We are snakes. We slither to get where we are going. They would be shocked to see Mawozo invade Miami." These conversations demonstrate Defendant's leadership role in 400 Mawozo and her direct access to its leaders, Coconspirator 1 and Individual 2. Additionally, Defendant's statement that "[t]hey would be shocked to see Mawozo invade Miami" confirms Defendant's involvement with the 400 Mawozo in South Florida.

f.     According to call data records obtained during the investigation, Defendant was in regular contact with Coconspirator 1 and Individual 2. For example, between

approximately August 1, 2021 and October 21, 2021, Defendant used her cell phone to communicate with Coconspirator 1 on 88 occasions, 20 of those instances occurring between October 16 and October 21, 2021 (the time of the kidnappings).  Moreover, between August and October 21, 2021, Defendant communicated with Coconspirator 1 on 62 out of 71 days.  Additionally, between August 1, 2021 and October 11, 2021, Defendant used her cell phone to communicate with Individual 2 on 261 occasions.

g.  Law enforcement's search of Defendant's cell phone and call data records reveal that Defendant received specifications for the types of weapons and ammunition that Coconspirator 1 wanted Defendant to obtain and send to Haiti for use by 400 Mawozo.  For example, on October 10, 2021, Coconspirator 1 sent Defendant WhatsApp audio and text messages directing Defendant to purchase a Ruger firearm/ammunition.  Coconspirator 1 stated, "Is it on the butt of the firearm or the butt of the bullet? I got the firearm, but I need the bullets. I saw the firearm on a social media platform. If you have the firearm, then I need to have that bullet for the firearm. Please send me the video."  After Defendant responded, "On the butt of the bullet, baby[,]" Coconspirator 1 replied via text message, "5.7 X 28 Ruger 57 Prescott az U S A Ruger 57."

h.  Similarly, on or about October 4, 2021, Defendant sent Coconspirator 1 a text message saying, "I got the bullets," and then sent Coconspirator 1 a photograph of a Springfield M1A rifle.

i.  To carry out the scheme, Defendant and her co-defendants completed false ATF 4473 Forms attesting that they were the "actual buyers" of the firearms and that they were

not buying the firearms for another person.  In fact, however, they intended to ship and did ship the firearms to Haiti for use by 400 Mawozo.

j.      On or about October 6, 2021, Defendant sent a text message to co-defendant Walder St. Louis directing co-defendant St. Louis to purchase two AK-47s and one AR-15 firearm from "Patrick" (last name unknown), who law enforcement believes is associated with a pawn shop (a licensed firearms dealer) in Miami, Florida.  Approximately five hours later, from inside the pawn shop, co-defendant St. Louis sent Defendant four pictures of firearms. According to receipts from the pawn shop and independent ATF records, on October 6, 2021, co-defendant St. Louis purchased 3 weapons, at a cost of $2,855.  Later, on October 11, 2021, Defendant sent co-defendant St. Louis a photograph of a Western Union receipt from Haiti confirming that $2,500 had been wired to co-defendant St. Louis's account. Approximately 55 minutes after the transmission of the above receipt, co-defendant St. Louis sent an audio message to Defendant stating, "I sent two barrels and I have other firearms inside of it.  They sent the barrels for $400 dollars . . . the barrels went to Laboule 16."  According to the law enforcement agent, Laboule 16 is a location south of Port au Prince.

k.      Photographs seized from Defendant's cell phone show barrels, likely containing the above-described weapons to be shipped to Haiti.  The photographs, which were introduced into evidence, are date-stamped October 9, 2021, October 11, 2021 and October 19, 2021. *See* Gov. Exh. 1.   According to the law enforcement agent, the photos show that the firearms were wrapped in garbage bags, loaded into large multi-gallon drums/barrels, and

then covered with various innocuous products on top, such as clothes, shoes, and Gatorade, to conceal the weapons for smuggling them out of the U.S. into Haiti.

l.	After her arrest, Defendant handwrote a 3-page letter admitting, among other things, that: (i) she was a member of 400 Mawozo; (ii) she purchased weapons and ammunition for 400 Mawozo; (iii) she smuggled weapons and ammunition from the United States to Haiti for 400 Mawozo; and (iv) she received instructions and money from Haiti to purchase the weapons and ammunition.

4.	Defendant's history and personal characteristics also support pretrial detention. The Court incorporates and makes part of this Order the facts contained in the PSR. Defendant has substantial ties to Haiti. For example, Defendant's father resides in Haiti and Defendant travels frequently to Haiti. Moreover, Defendant's allegiance and leadership role in 400 Mawozo, combined with Defendant's direct access to the gang's leadership, show Defendant's high-level role in 400 Mawozo. The nature of the alleged offenses reflects that Defendant has easy access to cash, weapons, and ammunition. Defendant and her co-defendants obtained weapons and ammunition in the United States and smuggled these to the 400 Mawozo in Haiti, using straw purchasers and falsified ATF paperwork. As well, Defendant's statements confirm her allegiance to this violent gang and her enthusiasm for the possibility of causing harm in the Miami area. In her own words, Plaintiff said, "We are snakes. We slither to get where we are going. They would be shocked to see Mawozo invade Miami." Lastly, and most importantly, Defendant admitted her involvement with Mawozo and her role in the instant offenses in a post-arrest handwritten statement. All combined, these facts lead the undersigned to conclude that no condition or combinations of conditions suffice to guarantee the safety of others or the community.

Based on the above findings of fact, the nature of the charged offenses, and the overall weight of the evidence, the Court finds by clear and convincing evidence that Defendant poses a danger to the community. The Court makes no finding on the Defendant's risk of flight given the overwhelming evidence that Defendant poses a clear danger to others and the community.

Accordingly, the Court hereby directs that:

a. Defendant be detained without bond;

b. Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

c. Defendant be afforded reasonable opportunity for private consultation with her counsel;

d. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined, deliver the defendant to a United States Marshal for the purpose of appearance in connection with court proceedings.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, on November 5, 2021.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc:  Pretrial Services
     U.S. Marshals Service
     All counsel of record