CLOSED

# U.S. District Court
## Southern District of Florida (Ft Lauderdale)
## CRIMINAL DOCKET FOR CASE #: 0:21−mj−06598−AOV−1
### *Internal Use Only*

Case title: USA v. Tunis

Date Filed: 11/01/2021

Date Terminated: 11/08/2021

Assigned to: Magistrate Judge
Alicia O. Valle

**Defendant (1)**

| | | |
|---|---|---|
| **Eliande Tunis**<br>72167−509<br>*YOB 1978 ENGLISH*<br>*TERMINATED: 11/08/2021* | represented by | **Mark Russell Eiglarsh**<br>Mark Eiglarsh Law Office<br>4770 Biscayne Boulevard<br>Suite 610<br>Miami, FL 33137<br>305−674−0003<br>Fax: 305−674−0102<br>Email: Mark@EiglarshLaw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>Designation: Temporary |

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Opening)** | |
|---|---|
| None | |

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Terminated)** | |
|---|---|
| None | |

| **Complaints** | **Disposition** |
|---|---|
| 18:371.F Conpiracy, 18:554.F Smuggling | |

1

**Plaintiff**

USA                                         represented by  **M. Catherine Koontz**
United States Attorney's Office
Fort Lauderdale, FL
954–660–5940
Email: Catherine.Koontz@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 11/01/2021 | 1 | | Magistrate Removal of Complaint from District of Columbia Case number in the other District not on complaint as to Eliande Tunis (1). (dd) (Entered: 11/02/2021) |
| 11/01/2021 | | | Arrest of Eliande Tunis (dd) (Entered: 11/02/2021) |
| 11/01/2021 | 2 | | PAPERLESS NOTICE OF HEARING as to Eliande Tunis Detention Hearing set for 11/5/2021 10:30 AM in Fort Lauderdale Division before FTL Duty Magistrate. Removal Hearing set for 11/5/2021 10:30 AM in Fort Lauderdale Division before FTL Duty Magistrate. (dd) (Entered: 11/02/2021) |
| 11/02/2021 | 3 | | Minute Entry for proceedings held before Magistrate Judge Alicia O. Valle: Initial Appearance in Rule 5(c)(3)/Rule 40 Proceedings as to Eliande Tunis held on 11/2/2021. Attorney added: Mark Russell Eiglarsh for Eliande Tunis (Digital 12:03:08) (dd) (Entered: 11/02/2021) |
| 11/02/2021 | 4 | | NOTICE OF TEMPORARY ATTORNEY APPEARANCE: Mark Russell Eiglarsh appearing for Eliande Tunis (Eiglarsh, Mark) (Entered: 11/02/2021) |
| 11/05/2021 | 5 | | Minute Order for proceedings held before Magistrate Judge Alicia O. Valle: Detention Hearing as to Eliande Tunis held on 11/5/2021. Witness Special Agent Joseph Kenny testified. The Court finds that the Government has met burden of proof and orders the defendant detained pending trial. The Court also find that probable has been established. Written Order to follow. (Digital 14:32:27) Signed by Magistrate Judge Alicia O. Valle on 11/5/2021. (tpl) (Entered: 11/08/2021) |
| 11/05/2021 | 6 | | EXHIBIT LIST (tpl) (Entered: 11/08/2021) |
| 11/08/2021 | 7 | | ORDER OF DETENTION as to Eliande Tunis. Signed by Magistrate Judge Alicia O. Valle on 11/5/2021. *See attached document for full details.* (js06) (Entered: 11/08/2021) |
| 11/08/2021 | 8 | | COMMITMENT TO ANOTHER DISTRICT as to Eliande Tunis. Defendant committed to Washington District of Columbia.. Closing Case for Defendant. Signed by Magistrate Judge Alicia O. Valle on 11/8/2021. *See attached document for full details.* (tpl) (Entered: 11/08/2021) |

AO 91 (Rev. 08/09) Criminal Complaint

21-MJ-6598-AOV

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| ELIANDE TUNIS, DOB: 05/15/1978 | ) | Case No. |
| JOCELYN DOR, DOB: 01/02/93 | ) | |
| AND | ) | |
| WALDER ST. LOUIS, DOB: 09/25/1988 | ) | |
| | ) | |
| Defendant(s) | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___September 24-October 30, 2021___ in the county of _____ in the _____ District of ___Columbia___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy |
| 50 U.S.C. § 4811(2) | Export Control Reform Act |
| 18 U.S.C. § 554(a) | Smuggling |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Ryan Bonura, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
**Telephone** _____ (specify reliable electronic means).

Date: ___10/31/2021___

_____
*Judge's signature*

City and state: ___Washington, DC___

U.S. Magistrate Judge G. Michael Harvey
Printed name and title

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| **v.** | Case No. _____ |
| ELIANDE TUNIS,<br>JOCELYN DOR,<br>**AND**<br>WALDER ST. LOUIS,<br>        **Defendants.** | <u>Filed Under Seal</u> |

## AFFIDAVIT IN SUPPORT OF
## <u>AN APPLICATION FOR AN ARREST WARRANT</u>

This affidavit is submitted by Special Agent Ryan Bonura in support of criminal complaints and applications for arrest warrants relating to:

ELIANDE TUNIS (hereinafter "TUNIS"), a U.S. citizen and resident of Florida;

JOCELYN DOR (hereinafter "DOR"), a Haitian citizen, who resides in Florida; and

WALDER ST. LOUIS (hereinafter "ST. LOUIS") a Haitian citizen, who resides in Florida.

I respectfully submit that there is probable cause to believe that, between September 24, 2021 and the present, the above-identified individuals have committed the following criminal offenses in violation of United States law:

1. 18 U.S.C. § 371 (Conspiracy to Violate the Export Control Reform Act ("ECRA"), 50 U.S.C. § 4819); and

2. 50 U.S.C. § 4819 (ECRA); and

3. 18 U.S.C. § 554(a) (Smuggling).

## <u>AGENT BACKGROUND</u>

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and I have been since March 2012. I am an investigative or law enforcement officer of the United Sates within

the meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Titles 8, 18, 79, 21, and 31 of the United States Code. Throughout my career, I have participated in and directed criminal investigations involving international violent crime, kidnapping, homicide, and material support to terrorists. I am a graduate of the FBI Academy, where I was trained in, among other topics, criminal investigative techniques, and extraterritorial investigations. As a federal agent, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer I am authorized to execute warrants issued under the authority of the United States. I have personally participated in this investigation and have witnessed many of the facts and circumstances described herein. I have also revived information from other federal and foreign law enforcement officials relating to this investigation. The statements contained in this affidavit are based on my own observations, witness interviews, document reviews and reliable information provided to me by other federal and foreign law enforcement officials. Because this affidavit is submitted for the purpose of seeking the issuance of a criminal complaint and arrest warrant, it does not include every fact known to me concerning the investigation.

**JURISDICTION AND VENUE**

2.     This Court has jurisdiction and venue to issue the requested warrant. Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within the District of Columbia. *See* 18 U.S.C. § 3237. Moreover, venue for 18 U.S.C. § 554(a) is proper in the District because there is venue for the underlying offense, 50 U.S.C. § 4819, in the District.

2

## STATUTES AND REGULATIONS

### *The Export Control Reform Act*

3.      The Export Control Reform Act of 2018 ("ECRA") provides, among its stated policy objectives, that "[t]he national security and foreign policy of the United States require that the export, reexport, and in-country transfer of items, and specific activities of United States persons, wherever located, be controlled . . . ." 50 U.S.C. § 4811(2). To that end, ECRA grants the President the authority to control "(1) the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or by foreign persons; and (2) the activities of United States persons, wherever located, relating to" specific categories of items and information. *Id.* at § 4812(b). ECRA further grants to the Secretary of Commerce the authority to establish the applicable regulatory framework. *Id.* at § 4813(a).

4.      Pursuant to ECRA, the Department of Commerce ("DOC") reviews and controls the export of certain items, including commodities, software, and technologies, from the United States to foreign countries through the Export Administration Regulations ("EAR"), 15 C.F.R. §§ 730-774. In particular, the EAR restrict the export of items that could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. The EAR impose licensing and other requirements for items subject to the EAR to be exported lawfully from the United States or re-exported lawfully from one foreign destination to another.

5.      The most sensitive items subject to EAR controls are identified on the Commerce Control List ("CCL"), published at 15 C.F.R. part 774, Supp. No. 1. Items on the CCL are categorized by an Export Control Classification Number ("ECCN") based on their technical characteristics. Each ECCN has export control requirements depending on the destination, end

user, and end use.

6.     Relevant here, the DOC is currently responsible for licensing the export of a variety of firearms and related commodities from the United States. When required, these licenses are issued by the DOC's Bureau of Industry and Security ("BIS"), which is located in the District of Columbia.

7.     Pursuant to 50 U.S.C. § 4819(a)(1), "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of this subchapter or of any regulation, order, license, or other authorization issued under this subchapter, including any of the unlawful acts described in paragraph (2)." Such unlawful acts include, among other acts, that "[n]o person may order, buy, remove, conceal, store, use, sell, loan, dispose of, transfer, transport, finance, forward, or otherwise service, in whole or in part, or conduct negotiations to facilitate such activities for, any item exported or to be exported from the United States, or that is otherwise subject to the [EAR], with knowledge that a violation of this subchapter, the [EAR], or any order, license or authorization issued thereunder, has occurred, is about to occur, or is intended to occur in connection with the item unless valid authorization is obtained therefor." *Id.* at § 4819(a)(2). Pursuant to 50 U.S.C. § 4819(b), "[a] person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids and abets in the commission of, an unlawful act described in subsection (a)" shall be guilty of a crime and subject to imprisonment of up to 20 years.

4

### *Smuggling*

8.     Title 18, United States Code, Section 554 makes it illegal to export an item in violation of another law, including the ECRA, and also makes it illegal to purchase, store, sell, or conceal any item intended for illegal export from the United States. Specifically, Section 554(a) provides: "Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States," shall be subject to criminal penalties. Violations of Section 554 are punishable by a prison term of up to 10 years. 18 U.S.C. § 554(a).

### *The Gun Control Act*

9.     The Gun Control Act, 18 U.S.C. § 921 *et seq.*, requires a license to deal in firearms from the Attorney General, who is located in the District of Columbia. Firearms dealers are required to fill out, keep, and maintain paperwork, *i.e.*, a Firearms Transaction Record, related to certain firearms sales, and make the same available to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), which is also located in the District of Columbia. Among other things, it is illegal under the Gun Control Act to make a false statement during the purchase of a firearm. *See* 18 U.S.C. § 922(a)(6).

### *Conspiracy*

10.     Under 18 U.S.C. § 371, it is illegal to conspire to commit a crime or defraud the United States, or any agency thereof.

## FACTS SUPPORTING PROBABLE CAUSE

### *Background on 400 Mawozo and Haiti Kidnappings*

11.     400 Mawozo is a Haitian gang and criminal organization that operated in the Croix-des-Bouquets area to the east of Port-au-Prince, Haiti.

12.     On or about October 16, 2021, at approximately 1:00 p.m. (EST), sixteen U.S. citizens were kidnapped near Port au Prince, Haiti, including five children, one as young as eight months old. The victims were part of a missionary organization and had been taking a bus to visit a local orphanage. While returning therefrom, the kidnappers forced at gunpoint the group's bus driver to stop and took control of the bus and its occupants.

13.     On or about October 16, 2021, a representative of the missionary organization received a phone call from an individual claiming to be the leader of the kidnappers. The individual stated that he had the victims and was holding them for ransom of $1 million each. The individual told the representative that he would be in touch regarding next steps.

14.     On or about October 18, 2021, Haitian social media began to share reporting that a specific gang, known locally as 400 Mawozo, had taken credit for the kidnapping and was making publicly known the ransom demand. On or about October 22, 2021, a Facebook video post showed Individual 2 at a local funeral for killed gang members stating that he intended to kill the Americans if he did not receive his money.

15.     As of the date of this affidavit, the hostage takers have had several ransom calls with a representative of the missionary organization. The hostage takers have not released any of the victims.

6

9

### The Conspirators

16.     Coconspirator 1 is a Haitian national and a member of 400 Mawozo. Coconspirator 1 is incarcerated, but still serves as a leader of the organization in Haiti and directs operations from prison using an unmonitored cellular phone.

17.     Individual 2 is a Haitian national and a member of 400 Mawozo. Individual 2 serves as a leader of the organization in Haiti. Individual 2 has appeared on videos posted on social media, stated his name, and declared himself as the leader of 400 Mawozo, including videos posted on social media sites YouTube and Facebook on or about October 22, 2021. Individual 2 has given video recorded statements to the Haitian press in which he claims to be the leader of 400 Mawozo, including in videos posted by press organizations on or about April 13, 2020, and September 6, 2021.

18.     TUNIS is a U.S. citizen, born in Haiti, who resides in Florida and is a member of 400 Mawozo. As described further herein, TUNIS and her coconspirators obtained weapons and ammunition in the United States and sent the same to 400 Mawozo members in Haiti. In order to achieve the scheme, among other things, TUNIS used straw purchasers and falsified ATF paperwork and smuggled and concealed the weapons and ammunition in shipping containers. TUNIS has pledged her allegiance to 400 Mawozo on prior occasions, including as follows:

      a.  On or about October 19, 2021, TUNIS texted Coconspirator 1 on WhatsApp (in Creole), "Don't worry about it, stay calm. You know we are 400 Mawozo and we are strong. Keep a cool head."[1]

---

[1]     Messages in Creole were translated into English by FBI interpreters.

b. Also on or about October 19, 2021, TUNIS sent an audio file to Coconspirator 1 on WhatsApp (in Creole), "We are snakes, We slither to get where we are going. They would be shocked to see Mawozo invade Miami."

These conversations demonstrate TUNIS's leadership in the gang because she directly communicates with its leader, Coconspirator 1. Additionally, TUNIS's statement that "They would be shocked to see Mawozo invade Miami" confirmed TUNIS's covert affiliation with the gang in South Florida.

19. DOR is a Haitian citizen, who resides in Florida. DOR holds a Florida concealed carry ("CCW") permit, and the five-day waiting period to possess a firearm is inapplicable to DOR.

20. ST. LOUIS is a Haitian citizen, who resides in Florida. ST. LOUIS holds a Florida CCW permit, and the five-day waiting period to possess a firearm is inapplicable to ST. LOUIS.

### *The Conspiracy*

21. Beginning at least on or about September 24, 2021, and continuing until the present, TUNIS, Coconspirator 1, DOR, ST. LOUIS, and others known and unknown, in an offense begun and committed in Haiti, and continued within the District of Columbia and elsewhere, knowingly combined, conspired, confederated, and agreed together and with each other to commit a crime against the United States and its agency, DOC, to wit to export and cause the exportation of goods from the United States to Haiti without having first obtained the required licenses from BIS, located in the District of Columbia, in violation of 50 U.S.C. § 4819 (ECRA).

22. It was part and a goal of the conspiracy to acquire U.S.-origin goods, specifically firearms and ammunition, from the United States to supply to members of the 400 Mawozo gang in Haiti; to conceal from United States licensed firearm dealers and, in turn from the United States government and its agency, ATF, that the U.S.-origin goods were destined for Haiti so as to avoid

penalties and disruption of the illegal activity; to frustrate the laws and regulations of the United States; and to evade the prohibitions and licensing requirements of ECRA. The conspiracy was effected in and by the following manners and means, among others:

A.    According to call data records, TUNIS (using a cellular telephone with the number ending in *3447) regularly contacted what your Affiant believes are the phone numbers utilized by Coconspirator 1 (ending in *5752) and Individual 2 (ending in *3589).

i.   From on or about August 1, 2021, until on or about October 21, 2021, the telephone number of TUNIS had contact with Coconspirator 1 on 88 occasions, and 20 of those calls (23%) have occurred between October 16-21, 2021.

ii.   From on or about August 1, 2021, until on or about October 11, 2021, the telephone number of TUNIS had contact with Individual 2 on 261 occasions. In that time period, TUNIS and Coconspirator 1 spoke on 62 out of 71 days.

iii.  During the same time periods, TUNIS had contact with Coconspirator 1 and Individual 2 on several occasions, where the calls overlapped and thus your Affiant deduces that these were three-way calls, as follows:

| DATE AND TIME | CALLING NUMBER | CALLED NUMBER | DURATION (minutes) |
|---|---|---|---|
| 09/12/2021 21:42:00 | Individual 2 | Coconspirator 1 | 30.58 |
| 09/12/2021 21:53:47 | TUNIS | Coconspirator 1 | 19.02 |

| | | | |
|---|---|---|---|
| 10/19/2021 16:54:01 | Coconspirator 1 | Individual 2 | 8.12 |
| 10/19/2021 16:57:18 | TUNIS | Coconspirator 1 | 11.43 |

| | | | |
|---|---|---|---|
| 10/21/2021 07:17:59 | Coconspirator 1 | Individual 2 | 20.20 |
| 10/21/2021 07:21:22 | TUNIS | Coconspirator 1 | 4.02 |

B.      According to messages found on TUNIS's phone, in combination with call data records, TUNIS obtained specifications for weapons and ammunition that Coconspirator 1 wanted to be sent to Haiti for use by 400 Mawozo.

C.      According to messages found on TUNIS's phone, in combination with call data records, TUNIS purchased, or instructed DOR and ST. LOUIS to purchase, weapons and ammunition for the gang.

        i.      For instance, on or about October 5, 2021, TUNIS and DOR exchanged a series of WhatsApp text and audio messages while DOR was shopping for firearms and ammunition in a gun store in Orlando, Florida. During these conversations TUNIS frequently coached DOR about what firearms to purchase. DOR became concerned because the gun store clerk suspected he was buying firearms for another person and told TUNIS to stop calling him.

       ii.      Similarly, on or about October 6, 2021, TUNIS forwarded to ST. LOUIS an audio message via WhatsApp, in which Coconspirator 1 was admonishing ST. LOUIS  for his failure to follow Coconspirator 1's instructions to purchase firearms and was praising DOR for quickly following similar orders. Upon hearing the message, ST. LOUIS responded, "I'm not going to pick the stuff (firearms) with that tone. But don't worry. I'll fix it."

D.      As described further herein, TUNIS, DOR, and ST. LOUIS  filled out false ATF forms stating that they were the "actual buyers" of the firearms and that they were not

10

13

buying the firearms for another person, when in fact, they intended to ship and did ship the firearms to Haiti for use by 400 Mawozo.

      E.     TUNIS, DOR, and ST. LOUIS shipped, caused the firearms to be shipped, or attempted the same, to Haiti, in part by smuggling the weapons. Specifically, the weapons were wrapped in various packaging, stored in barrel drums, and covered with various household items to disguise the shipment.

      F.     In order to fund this conspiracy, TUNIS fraudulently obtained money from V-1, an elderly individual for whom TUNIS worked, and caused the same to be wired to TUNIS'S bank account.

### Exported Items Subject to the CCL

23.     TUNIS, DOR, and ST. LOUIS purchased and attempted to purchase U.S.-origin goods, including firearms and ammunition, from several companies, for export to Haiti and for use of 400 Mawozo Coconspirator 1, Individual 2, and others known and unknown, including the items listed below (see Para. 25-44).

24.     As relevant here, all of the items listed below (see Para. 25-44) have been classified by BIS under ECCN 0A501.a and are subject to the EAR. Items under this ECCN are controlled for National Security, Regional Stability, and Firearms Convention reasons. According to a BIS senior licensing officer, export of these weapons from the United States to Haiti requires an export license issued by BIS. A search of BIS licensing information using the names of the individuals involved in these transactions failed to identify any valid export license(s) for these transactions.

### A.    SPRINGFIELD ARMORY M1A RIFLE

25.     On or about September 27, 2021, DOR sent to TUNIS two screen shots of weapons from a sporting goods store website depicting a Springfield M1A National Match Rifle,

Springfield M1A SOCCOM 16 inch Close Quarter Battle Rifle, and a Springfield Armory M1A Scout Squad rifle. On or about October 4, 2021, TUNIS sent Coconspirator 1 a text message saying "I got the bullets" and then sent Coconspirator 1 a photograph of a Springfield M1A.

26.     According to firearm store and ATF records, on or about October 6, 2021, DOR purchased a Springfield Armory rifle (serial number ("SN") 464977) for $2,555.99, from a licensed firearms dealer in Florida.

**B.     BARRRETT FIFTY CALIBER RIFLE**

27.     On or about October 4, 2021, DOR sent TUNIS a video apparently taken at a firearms dealer, showing a Barrett 82A1 .50 caliber rifle, which your affiant knows from publicly available information that such rifles typically cost between $10,000 to $15,000. In the video, DOR zoomed in to show TUNIS multiple parts of the firearm and the respective .50 caliber ammunition in the display case.

28.     According to phone records for a phone number believed to be associated with Coconspirator 1 and the phone number used by TUNIS, on or about October 4, 2021, Coconspirator 1 and TUNIS had an 86-minute phone call. Approximately one minute after the phone call began, Coconspirator 1 placed a call to DOR that lasted approximately 46 minutes. The timing of the calls likely indicates that there was a three-way call between Coconspirator 1, DOR, and TUNIS.

29.     Also on or about October 4, 2021, TUNIS deposited a $30,000 check into her TD bank account that ended in 9870.

30.     On or about October 5, 2021, TUNIS conducted a series of financial transactions that resulted in a wire transfer of $15,000 to an account at a Fifth Third Bank account number ending in *6301, which your affiant believes to be associated with DOR based on records from

12

the payment app Zelle. Also on or about October 5, 2021, TUNIS sent DOR a WhatsApp message with a receipt of the wire transfer. Also on or about October 5, 2021, DOR sent TUNIS an audio message acknowledging receipt of the money transfer.

31.     According to firearm store and ATF records, on or about October 6, 2021, DOR purchased a Barrett rifle (SN #AA012733) for $11,79.99, from a licensed firearms dealer in Florida.

32.     Also on or about October 6, 2021, TUNIS sent DOR an audio message (in Creole) to discuss the specialized ammunition used for the Barrett rifle.

> **TUNIS:** "What's going on? I'm anxious. My heart is beating fast."
>
> **DOR:** "For the small one, the type of ammo it takes is the 308. I don't know if you want some of that. For the powerful one, they won't sell me ammo because they haven't tested it. I want those bullets. When you shoot, they're like bombs. They make so much damage. It's so powerful it catches fire like a bomb…I'm going to try to convince him to sell me them. If he will sell me them, he told me to buy 10, but I would only buy five."

33.     Based on my training and experience, I assess that when DOR uses the term "308," he is likely referring to the caliber of the rifle. I also assess that when DOR used the term "powerful one," he is likely referring to the ammunition used for a .50 caliber rifle, in this case the Barrett rifle as compared to a smaller caliber such as the .308 caliber. Based on the context of this conversation in the entirety of the conspiracy, I assess that when DOR states "if he will sell me them," he is referring to the store clerk, and when DOR stated "he told me to buy 10," s/he is likely referring to Coconspirator 1. Other text and voice messages obtained in the course of the investigation show that Coconspirator 1 often placed "orders" regarding various weapons and ammunition.

34.     According to location information for TUNIS's cellular phone, on or about October 7, 2021, TUNIS's phone was located at longitude/latitude coordinates that correspond to the

known location for DOR's residence in Orlando, Florida. Later that same day, TUNIS's phone was located at longitude/latitude coordinates corresponding with Boca Raton, Florida. Your affiant believes the above movement is consistent with TUNIS obtaining the firearm from DOR and returning with it to South Florida.

### C. TWO CENTURY ARMS RIFLES AND A PALMETTO ARMS PISTOL

35.     On or about October 6, 2021, TUNIS sent a text message to ST. LOUIS, directing ST. LOUIS to purchase two AK-47s and one AR-15 firearm from "Patrick," last name unknown, who your affiant believes to be associated with a pawn shop in Miami, Florida.

36.     Also on or about October 6, 2021, approximately five hours after the above text message was sent, ST. LOUIS sent to TUNIS four pictures of firearms from what appears to be the inside of the aforementioned pawn shop, a licensed firearm dealer, based on my review of open source information about the shop.

37.     According to receipts from the pawn shop and ATF records, also on October 6, 2021, ST. LOUIS purchased the following weapons:

    a.   Century Arms 7.62 caliber VSKA (SN SV7034765) for $1,074.77;

    b.   Century Arms WASR-10 7.62 caliber (SN 19222511RO) for $841.12; and

    c.   Palmetto Arms PA-15 caliber 5.56 (SN SCD617477) for $747.66.

38.     On or about October 10, 2021, ST. LOUIS sent to TUNIS a photograph of a single receipt from the pawn shop in the amount of $2,855.

39.     On or about October 11, 2021, TUNIS sent to ST. LOUIS a photograph of a Western Union receipt from Haiti showing that $2,500 was wired to ST. LOUIS's account.

40.     On or about October 11, 2021, approximately 55 minutes after the transmission of the photograph message referenced in paragraph 39, ST. LOUIS sent an audio message to TUNIS

14

stating, "I sent two barrels and I have other firearms inside of it. They sent the barrels for $400 dollars...the barrels went to Laboule 16." Based on my knowledge of the investigation, "Laboule 16" refers to a location south of Port au Prince.

### D. RUGER PISTOL

41.     On or about October 10, 2021, TUNIS sent a picture of a Ruger pistol to Coconspirator 1. Thereafter, also on or about October 10, 2021, Coconspirator 1 and TUNIS exchanged the following WhatsApp audio and text messages (in Creole):

> **Coconspirator 1:** "Is it on the butt of the firearm or the butt of the bullet? I got the firearm,     but I need the bullets. I saw the firearm on a social media platform. If you have the firearm, then I need to have that bullet for the firearm. Please send me the video."
>
> **TUNIS:** "On the butt of the bullet, baby"
>
> **Coconspirator 1:** (responding now via text message) "5.7 X 28 Ruger 57 Prescott az U S A Ruger 57"

42.     Also on or about October 10, 2021, TUNIS had the following text and audio file exchange via WhatsApp with Individual 3, a contact in her phone and an owner of a security company. (Individual 3 is a Haitian-born, legal permanent resident of the United States.)

   a.  TUNIS sent the picture of a Ruger pistol to Individual 3.

   b.  In response, TUNIS and Individual 3 exchanged text messages in which TUNIS requested Individual 3 purchase the Ruger and ammunition for the handgun.

   c.  Individual 3 responded via audio message (in Creole) to TUNIS saying, "Are you crazy?" Individual 3 then sent a text message (in English) to TUNIS, stating, "Sorry to informed [sic] you due to my reputation and pass deportations stories I won't be able to help you with anything of your demanding. Once again my apologies on that but do not tell him because my life might in dangerous."

d. TUNIS replied by text message via WhatsApp, stating, "No problem," and that she would receive the money to make the purchase instead.

e. Individual 3 replied by text message via WhatsApp, expressing concern that the DCPJ [Directorate of the Judicial Police in Haiti] "talk a lot."

f. TUNIS replied by text message (in Creole) via WhatsApp, telling Individual 3 to "relax" because she would take care of it.

43.     According to ATF records, on or about October 14, 2021, TUNIS purchased a Ruger 5.7 serial number 64332404, at a pawn and gun store in Pompano Beach, Florida, for an unknown amount.

44.     Also on or about October 14, 2021, TUNIS sent Coconspirator 1 a text message via WhatsApp stating that "the other gun will come on Tuesday." TUNIS further explained by text message that the gun was like the one that Coconspirator 1 had previously acquired in Haiti and like the one that was in the picture Coconspirator 1 had previously sent to TUNIS. TUNIS sent an audio message (in Creole) via WhatsApp in which she explained to Coconspirator 1 that the gun has the "pointy bullets" and (in Creole) "it's the Ruger."[2]

*Knowledge of Export Requirements*

45.     There is probable cause to believe that TUNIS, DOR, and ST. LOUIS all knew that a license or permission was required to ship the firearms that they were purchasing to Haiti.

46.     ATF requires that Form 4473, Firearms Transaction Record, must be filled out as a condition of sale. Form 4473 states in part:

WARNING: The information you provide will be used to determine whether you are prohibited by Federal or State law from receiving a firearm. Certain violations of the Gun Control Act, 18 U.S.C. 921 *et. seq.*, are punishable by up to 10 years imprisonment and/or

---

[2]     Your affiant notes that information from the dealer indicates that this pistol has not yet been picked up by TUNIS.

16

up to a $250,000 fine. Any person who exports a firearm without a proper authorization from either the Department of Commerce or the Department of State, as applicable, is subject to a fine of not more than $1,000,000 and up to 20 years imprisonment.

47.    On or about the following dates, TUNIS, Dor, and ST. LOUIS  filled out Form 4473 in order to purchase firearms with the aforementioned language, and thus were aware that such firearms may not be exported without proper authorization from the U.S. government.

| Date of Form | Buyer | Location of Dealer |
| --- | --- | --- |
| 3/23/2020 | TUNIS | Pompano Beach, FL |
| 12/15/2020 | TUNIS | Pompano Beach, FL |
| 3/13/2021 | ST. LOUIS | Miami, FL |
| 3/13/2021 | TUNIS | Miami, FL |
| 4/17/2021 | TUNIS | Miami, FL |
| 9/21/2021 | ST. LOUIS | Miami, FL |
| 10/1/2021 | DOR | Orlando, FL |
| 10/6/2021 | DOR | Orlando, FL |
| 10/6/2021 | ST. LOUIS | Miami, FL |
| 10/11/2021 | TUNIS | Pompano Beach, FL |
| 10/14/2021 | TUNIS | Pompano Beach, FL |

48.    Additionally, Form 4473 asks in Question 21(a):

Are you the actual transferee/buyer of the firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)? **Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.**

49.    Also on or about the dates listed above, TUNIS, DOR, and ST. LOUIS  answered "Yes" to question 21(a), and thus knowingly submitted false information to the licensed firearm dealer and ATF.

17

### *Evidence of Exportation and Smuggling*

50.     There is probable cause to believe that the coconspirators engaged in exporting firearms to Haiti by means of smuggling on or about at least October 9, October 11, and October 19, 2021, or attempting to do the same.

**A.     October 9, 2021 Shipment**

51.     On or about October 5, 2021, DOR sent TUNIS an audio message via WhatsApp in which DOR stated how a particular rifle can be broken down for shipment.

52.     On or about October 9, 2021, TUNIS prepared and sent a shipment of firearms to Haiti. Based on my review of photographs from TUNIS's phone, TUNIS wrapped the firearms in garbage bags, loaded them into large multi-gallon drums/barrels, and then covered the firearms with various products such as clothes, shoes, and Gatorade. Relevant to this shipment, TUNIS took the following photographs of a such a shipment on or about October 9, 2021:

    a.  2:17 PM: Blue barrel with firearms inside wrapped in garbage bags

    b.  3:09 PM: Blue barrel with blue and pink backpack inside, with TUNIS's hand pointing to where the firearm is hidden

    c.  3:20 PM: Blue barrel with sheet covering contents

    d.  3:24 PM: Two blue barrels covered with lids

    e.  4:14 PM: Blue barrel with firearms inside wrapped in garbage bags

**B.     October 11, 2021 Shipment**

53.     As previously described, on or about October 11, 2021, ST. LOUIS sent an audio message via WhatsApp to TUNIS stating, "I sent two barrels and I have other firearms inside of it. They sent the barrels for $400 dollars...the barrels went to Laboule 16." Based on my

18

knowledge of the investigation, "Laboule 16" refers to a location south of Port au Prince. As previously described, ST. LOUIS purchased firearms on or about October 6, 2021.

**C.    October 19, 2021 Shipment**

54.    According to location data stored on TUNIS's phone, on or about October 18, 2021, at approximately 9:00 AM (ET), TUNIS's phone was located at the longitude/latitude coordinates 25,881654, -80.219501, which correspond to the location of ST. LOUIS's address, and is consistent with TUNIS obtaining items for shipment from ST. LOUIS.

55.    As previously described, based on my review of photographs from TUNIS's phone, TUNIS wrapped the firearms in garbage bags, loaded them into large multi-gallon plastic barrels, and then covered the firearms with various products such as clothes, shoes, and Gatorade. Relevant to this shipment, TUNIS took the following photographs of a such a shipment on or about October 19-20, 2021:

 a.    October 19, 2021 (11:07 AM): Blue barrel with firearms wrapped in garbage bags

 b.    October 19, 2021 (11:07 AM): Blue barrel with firearms wrapped in garbage bags

 c.    October 19, 2021 (11:09 AM): Blue barrel with firearms wrapped in garbage bags

 d.    October 20, 2021 (12:00 AM): Multiple blue barrels covered in packing wrap

56.    Also found on TUNIS's phone was the stored contact information for "[First name] Bwat," with a phone number ending in *8097. Your affiant notes that, in Creole, "Bwat" translates to box, more specifically shipping box.  On or about October 18, 2021, TUNIS's phone had a 9 minute phone call with this contact. On or about October 19, 2021 TUNIS's phone had a 5 minute phone call with this contact. On or about October 20, 2021, TUNIS's phone had a 4 minute phone call with this contact. Also on or about October 20, 2021, "Bwat's" phone placed a 1 minute and

14 second phone call to TUNIS. Your affiant submits that these phone calls are consistent with the shipment to Haiti that occurred, or was attempted, on or about October 19, 2021.

57.     According to public information, the phone number for "Bwat" (ending in *8097), is associated with a furniture company located in Pompano Beach, Florida, which is owned and operated by Individual 4. Individual 4 is a Haitian born, U.S. citizen. Individual 4 has a Florida registration for a box truck and cargo vans. Your affiant notes that in some of TUNIS's pictures of barrels being sent to Haiti, there are displayed couches and other furniture being loaded into a white box truck, which is consistent with TUNIS using Individual 4 to ship the firearms to Haiti.

58.     Also on or about October 19, 2021, TUNIS sent a WhatsApp audio message to Coconspirator 1 saying the person picking up the shipment complained to TUNIS that the barrels were heavy. TUNIS stated to Coconspirator 1 that she told the shipper it was filled with rice. The shipper said rice is not that heavy, but TUNIS convinced the shipper to take the barrels anyway.

<u>**REQUEST TO SUBMIT WARRANT BY TELEPHONE<br>OR OTHER RELIABLE ELECTRONIC MEANS**</u>

59.     I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in connection with this Application for an Arrest Warrant. I submit that Assistant U.S. Attorney Karen P. Seifert, an attorney for the United States, is capable of identifying my voice and telephone number for the Court.

20

## CONCLUSION

60.     Based on the forgoing, I submit that there is probable cause that between at least on or about September 24, 2021, and the present, TUNIS, DOR, ST. LOUIS, and their coconspirators have committed multiple counts of offenses 18 U.S.C. § 371 (Conspiracy to Violate the Export Control Reform Act (ECRA), 50 U.S.C. § 4819); 50 U.S.C. § 4819 (ECRA); and 18 U.S.C. § 554(a) (Smuggling).

Respectfully submitted,

Ryan Bonura
Special Agent
Federal Bureau of Investigation

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on **October 31, 2021**

G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| ELIANDE TUNIS | ) | Case No. |
| | ) | |
| | ) | |
| Defendant | | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

(name of person to be arrested)   ELIANDE TUNIS                                                      ,

who is accused of an offense or violation based on the following document filed with the court:

❏ Indictment   ❏ Superseding Indictment   ❏ Information   ❏ Superseding Information   ☑ Complaint
❏ Probation Violation Petition   ❏ Supervised Release Violation Petition   ❏ Violation Notice   ❏ Order of the Court

This offense is briefly described as follows:
  18 U.S.C. § 371; (Conspiracy)
  50 U.S.C. § 4811(2); (ECRA)
  18 U.S.C. § 554(a); (Smuggling)

Date:   10/31/2021

_____
*Issuing officer's signature*

City and state:   Washington, D.C.

_____
United States Magistrate Judge G. Michael Harvey
Printed name and title

| Return |
|---|
| This warrant was received on (date) _____ , and the person was arrested on (date) _____ at (city and state) _____ . |
| Date: _____           _____ *Arresting officer's signature*   _____ Printed name and title |

AO 442 (Rev. 01/09) Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only and therefore should not be filed in court with the executed warrant unless under seal.**

**(Not for Public Disclosure)**

Name of defendant/offender:   ELIANDE TUNIS

Known aliases:

Last known residence:   2951 NE 10th Ter, Pompano Beach, FL 33064

Prior addresses to which defendant/offender may still have ties:

Last known employment:

Last known telephone numbers:

Place of birth:

Date of birth:   05/15/1978

Social Security number:   027-764-348

Height:   5'6"                    Weight:   170

Sex:   Female                    Race:

Hair:                            Eyes:

Scars, tattoos, other distinguishing marks:

History of violence, weapons, drug use:

Known family, friends, and other associates (name, relation, address, phone number):

FBI number:

Complete description of auto:

Investigative agency and address:   Federal Bureau of Investigation

Name and telephone numbers (office and cell) of pretrial services or probation officer (if applicable):

Date of last contact with pretrial services or probation officer (if applicable):

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: M. Catherine Koontz (caseview.ecf@usdoj.gov,
catherine.koontz@usdoj.gov, christine.dodge2@usdoj.gov, jennifer.m.smith2@usdoj.gov,
usafls-brdkt@usdoj.gov), Magistrate Judge Alicia O. Valle (valle@flsd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:21624940@flsd.uscourts.gov
Subject:Activity in Case 0:21-mj-06598-AOV USA v. Tunis Arrest
```
Content–Type: text/html

## U.S. District Court

## Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 11/2/2021 at 10:07 AM EDT and filed on 11/1/2021

| | |
|---|---|
| **Case Name:** | USA v. Tunis |
| **Case Number:** | 0:21–mj–06598–AOV |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 **Arrest of Eliande Tunis (dd)**

**0:21–mj–06598–AOV–1 Notice has been electronically mailed to:**

M. Catherine Koontz &nbsp &nbsp Catherine.Koontz@usdoj.gov, CaseView.ECF@usdoj.gov,
christine.dodge2@usdoj.gov, Jennifer.M.Smith2@usdoj.gov, usafls–brdkt@usdoj.gov

**0:21–mj–06598–AOV–1 Notice has not been delivered electronically to those listed below and will be
provided by other means. For further assistance, please contact our Help Desk at 1–888–318–2260.:**

# COURT MINUTES/ORDER

## United States Magistrate Judge Alicia O. Valle

| Courtroom 203 | Date: 11/1/2021 | Time: 10:00am |
|---|---|---|

Defendant: Eliande Tunis(J)          J#: _____          Case #: 21-6598-AOV

AUSA: Cathy Koontz          Attorney: Mark Eiglarsh, ESQ (Temp)

Violation: Conspiracy; Export Control Reform Act; Smuggling

Proceeding: Initial Appearance- Rule 40/5 Removal          CJA Appt: _____

Bond/PTD Held: ☑ Yes  ☐ No          Recommended Bond: Detention

Bond Set at: _____          Co-signed by: _____

☐ Surrender and/or do not obtain passports/travel docs

☐ Report to PTS as directed/or _____ x's a week/month by phone: _____ x's a week/month in person

☐ Random urine testing by Pretrial Services Treatment as deemed necessary

☐ Refrain from excessive use of alcohol

☐ Participate in mental health assessment & treatment

☐ Maintain or seek full-time employment/education

☐ No contact with victims/witnesses

☐ No firearms

☐ Not to encumber property

☐ May not visit transportation establishments

☐ Home Confinement/Electronic Monitoring and/or Curfew _____ pm to _____ am, paid by _____

☐ Allowances: Medical needs, court appearances, attorney visits, religious, employment

☐ Travel extended to: _____

☐ Other: _____

Language: English

Disposition:
Defendant present via Vtc and verbally consents to proceed via video conference. Defendant advised of rights and charges.

---

**NEXT COURT APPEARANCE** Date: _____ Time: _____ Judge: _____ Place: _____

Report RE Counsel: _____

PTD/Bond Hearing: 11-5-2021 @ 10:30am

Prelim/Arraign or Removal: 11-5-2021 @ 10:30am

Status Conference RE: _____

D.A.R. 12:03:08          Time in Court: 15 mins

5

**CHECK IF APPLICABLE:** _____ For the reasons stated by counsel for the Defendant and finding that the ends of justice served by granting the ore tenus motion for continuance to hire counsel outweigh the best interests of the public & the Defendant in a Speedy Trial, the Court finds that the period of time from today, through and including _____, shall be deemed excludable in accordance with the provisions of the Speedy Trial Act, l8 USC 3161 et seq..

# COURT MINUTES/ORDER

## United States Magistrate Judge Alicia O. Valle

| Courtroom 203 | Date: 11/1/2021 | Time: 10:00am |
|---|---|---|

Defendant: Eliande Tunis(J)    J#:    Case #: 21-6598-AOV

AUSA: Cathy Koontz    Attorney: Mark Eiglarsh, ESQ (Temp)

Violation: Conspiracy; Export Control Reform Act; Smuggling

Proceeding: Initial Appearance- Rule 40/5 Removal    CJA Appt: _____

Bond/PTD Held: ☑ Yes ☐ No    Recommended Bond: Detention

Bond Set at: _____    Co-signed by: _____

☑ Surrender and/or do not obtain passports/travel docs

☐ Report to PTS as directed/or _____ x's a week/month by phone: _____ x's a week/month in person

☐ Random urine testing by Pretrial Services Treatment as deemed necessary

☐ Refrain from excessive use of alcohol

☐ Participate in mental health assessment & treatment

☐ Maintain or seek full-time employment/education

☐ No contact with victims/witnesses

☐ No firearms

☐ Not to encumber property

☐ May not visit transportation establishments

☐ Home Confinement/Electronic Monitoring and/or Curfew _____ pm to _____ am, paid by _____

☐ Allowances: Medical needs, court appearances, attorney visits, religious, employment

☐ Travel extended to: _____

☐ Other: _____

Language: English

Disposition: Defendant present via VTC and verbally consents to proceed via video conference. Defendant advised of rights and charges.

**NEXT COURT APPEARANCE**   Date:   Time:   Judge:   Place:

Report RE Counsel: _____

PTD/Bond Hearing: 11-5-2021 @ 10:30am

Prelim/Arraign or Removal: 11-5-2021 @ 10:30am

Status Conference RE: _____

D.A.R. 12:03:08    Time in Court: 15 mins

5

**CHECK IF APPLICABLE:** _____ For the reasons stated by counsel for the Defendant and finding that the ends of justice served by granting the ore tenus motion for continuance to hire counsel outweigh the best interests of the public & the Defendant in a Speedy Trial, the Court finds that the period of time from today, through and including _____, shall be deemed excludable in accordance with the provisions of the Speedy Trial Act, 18 USC 3161 et seq..

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA )
                              )
          vs.                 )      **CASE NO. 21-MJ-06598-VALLE**
                              )
                              )
**ELIANDE TUNIS**           )
                              )
        Defendant.        )
_____)

## NOTICE OF TEMPORARY APPEARANCE

COMES NOW Mark Eiglarsh of the Law Offices of Mark Eiglarsh, P.A. 3107 Stirling Road, Suite 207, Fort Lauderdale, Florida 33312, and hereby files this Notice of Temporary Appearance in the above-captioned cause.

IT IS HEREBY requested that the Clerk of the Court hereafter forward to the undersigned, copies of all pleadings filed in the above-captioned matter by the United States Attorney's Office, and any other party including all co-defendants and further.

IT IS HEREBY requested that the Clerk of this Court promptly notify the undersigned of the times, date and place of any hearings or reports, to ensure prompt appearance of the Defendant and counsel before this Court.

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed this 2nd day of November, 2021.

                              Respectfully submitted,

                              **LAW OFFICES OF MARK EIGLARSH**
                              **3107 Stirling Road**
                              **Suite 207**
                              **Fort Lauderdale, Florida 33312**
                              **Telephone (954) 500-0003**
                              **Facsimile (305) 674-0102**
                              **Mark@EiglarshLaw.com**

                     BY:  **/S/**  ***MARK EIGLARSH***_____
                              MARK EIGLARSH
                              Florida Bar No.: 956414

# COURT MINUTES/ORDER

## United States Magistrate Judge Alicia O. Valle

| Courtroom 203 | Date: 11/5/2021 | Time: 11:30am |
|---|---|---|

Defendant: Eliande Tunis(J)     J#: 72167-509   Case #: 21-6598-AOV

AUSA: Cathy Koontz                    Attorney: Mark Eiglarsh, Esq (Temp)

Violation: Conspiracy Smuggling

Proceeding: Detention Hearing/ Removal Hearing          CJA Appt:

Bond/PTD Held: ☑Yes ☐No       Recommended Bond: Detention

Bond Set at: Detention                          Co-signed by:

☐ Surrender and/or do not obtain passports/travel docs

Language: English

☐ Report to PTS as directed/or _____ x's a week/month by
phone: _____ x's a week/month in person

☐ Random urine testing by Pretrial Services _____
Treatment as deemed necessary

☐ Refrain from excessive use of alcohol

☐ Participate in mental health assessment & treatment

☐ Maintain or seek full-time employment/education

☐ No contact with victims/witnesses

☐ No firearms

☐ Not to encumber property

☐ May not visit transportation establishments

☐ Home Confinement/Electronic Monitoring and/or
Curfew _____ pm to _____ am, paid by _____

☐ Allowances: Medical needs, court appearances, attorney visits,
religious, employment

☐ Travel extended to: _____

☐ Other:

Disposition:

Defendant present via Video conference and verbally consents to proceed via VTC.

The Government proceeds by way of proffer.

Defendant along with counsel verbally stipulates to identity and waives identity hearing.

Agent Joseph Kenny sworn and testified

Government exhibit 1 admitted into evidence.

| NEXT COURT APPEARANCE | Date: | Time: | Judge: | Place: |
|---|---|---|---|---|

Report RE Counsel:

PTD/Bond Hearing:

Prelim/Arraign or Removal:

Status Conference RE:

D.A.R. 14:32:27                              Time in Court: 1 hour 50mins

**CHECK IF APPLICABLE:** _____For the reasons stated by counsel for the Defendant and finding that the ends of justice served by
granting the ore tenus motion for continuance to hire counsel outweigh the best interests of the public & the Defendant in a
Speedy Trial, the Court finds that the period of time from today, through and including _____, shall be deemed
excludable in accordance with the provisions of the Speedy Trial Act, 18 USC 3161 et seq..

pg 1 of 2

# COURT MINUTES/ORDER

## United States Magistrate Judge Alicia O. Valle

Courtroom 203          Date: 11-5-2021  Time: 11:30am

Defendant: Eliande Tunis          J#: 72167-509  Case #: 21-6598-AOV

AUSA: Cathy Koontz          Attorney: Mark Eiglarsh, ESQ

Violation: Conspiracy Smuggling

Proceeding: Detention Hearing          CJA Appt:

Bond/PTD Held: ☑ Yes ☐ No          Recommended Bond: Detention

Bond Set at:          Co-signed by:

☐ Surrender and/or do not obtain passports/travel docs

Language: English

☐ Report to PTS as directed/or _____ x's a week/month by phone: _____ x's a week/month in person

☐ Random urine testing by Pretrial Services _____ Treatment as deemed necessary

☐ Refrain from excessive use of alcohol

☐ Participate in mental health assessment & treatment

☐ Maintain or seek full-time employment/education

☐ No contact with victims/witnesses

☐ No firearms

☐ Not to encumber property

☐ May not visit transportation establishments

☐ Home Confinement/Electronic Monitoring and/or Curfew _____ pm to _____ am, paid by _____

☐ Allowances: Medical needs, court appearances, attorney visits, religious, employment

☐ Travel extended to:

☐ Other:

Disposition:
The Court finds that the Government has met burden as to danger to the community and orders the defendant detained pending trial. The Court also finds the probable has been established for the charges contained in the complaint. Written order to follow. The Court orders that the defendant be removed to District of Columbia. Commitment order will be entered upon entry of Detention Order

**NEXT COURT APPEARANCE**  Date:          Time:          Judge:          Place:

Report RE Counsel:

PTD/Bond Hearing:

Prelim/Arraign or Removal

Status Conference RE:

D.A.R.          Time in Court:

CHECK IF APPLICABLE: _____ For the reasons stated by counsel for the Defendant and finding that the ends of justice served by granting the ore tenus motion for continuance to hire counsel outweigh the best interests of the public & the Defendant in a Speedy Trial, the Court finds that the period of time from today, through and including _____, shall be deemed excludable in accordance with the provisions of the Speedy Trial Act, l8 USC 3161 et seq..

Page 2 of 2

AO 187 (Rev. 7/87) Exhibit and Witness List

# UNITED STATES DISTRICT COURT

SOUTHERN _____ DISTRICT OF _____ FLORIDA

United States of America

V.

Eliand Tunis

## EXHIBIT AND WITNESS LIST

Case Number:  0:21-MJ-6598-AOV

| PRESIDING JUDGE Alicia O. Valle | | PLAINTIFF'S ATTORNEY Cathy Koontz | | | DEFENDANT'S ATTORNEY Mark Eiglarsh |
|---|---|---|---|---|---|
| TRIAL DATE (S) Detention Hearing 11/5/2021 | | COURT REPORTER DAR 14:32:27 | | | COURTROOM DEPUTY T. Shotwell |
| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS* AND WITNESSES |
| 1 | | 11-5-2021 | yes | yes | Photos |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

* Include a notation as to the location of any exhibit not held with the case file or not available because of size.

Page 1 of ___1___ Pages

10/9/2021 3:09:51 PM +00:00 | DCIM |

10/9/2021 4:14:46 PM +00:00 | DCIM |

10/20/2021 12:00:52 AM +00:00 | DCIM |





AO386-C
GOVERNMENT
EXHIBIT
CASE NO. 21-mj-06598
AOV
EXHIBIT NO. 1

10/19/2021 11:07:12 AM +00:00 | DCIM |

10/9/2021 3:20:19 PM +00:00 | DCIM |



10/9/2021 2:12:21 PM +00:00 | DCIM |

10/9/2021 2:12:21 PM +00:00 | DCIM |



10/9/2021 12:41:17 PM +00:00 | DCIM |

10/9/2021 3:12:41 PM +00:00 | DCIM |



10/11/2021 7:26:46 PM +00:00 | DCIM |

10/10/2021 9:48:49 PM +00:00 | DCIM |



9/14/2021 11:33:02 PM +00:00



9/27/2021 9:14:39 PM +00:00



Attachment | 9/26/2021 2:55:38 PM +00:00

10/6/2021 7:42:42 PM +00:00





10/14/2021 3:27:47 PM +00:00 | DCIM |

10/10/2021 6:22:56 PM +00:00 | DCIM |

10/10/2021 6:22:56 PM +00:00 | DCIM |



10/15/2021 7:28:40 PM +00:00 | DCIM |

10/7/2021 3:22:39 PM +00:00 | DCIM |

9/21/2021 9:36:21 PM +00:00 | DCIM |



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-MJ-06598-AOV

UNITED STATES OF AMERICA,

v.

ELIANDE TUNIS,

    Defendant.

_____/

### DETENTION ORDER

On November 5, 2021, this Court held a hearing pursuant to Title 18 U.S.C. § 3142(f) to determine whether Defendant Eliande Tunis ("Defendant") should be detained prior to trial. The Government sought to detain Defendant on the grounds that she presents both a danger to the community and a risk of flight. *See* 18 U.S.C. § 3142(e). Having considered the factors enumerated in 18 U.S.C. § 3142(g), the Government's proffer, the testimony of the law enforcement agent, the facts contained in the Pretrial Services Report ("PSR"), and the arguments of counsel, the Court finds by clear and convincing evidence that the Defendant poses a danger to the community. Therefore, this Court orders that Defendant be detained prior to trial and until the conclusion thereof.

In accordance with the provisions of 18 U.S.C. § 3142(i)(1), this Court makes the following findings of fact and statement of reasons for the detention:

1.     Defendant is charged by Complaint with: (i) shipping firearms and ammunition to Haiti, in violation of the Export Control Reform Act, 50 U.S.C. § 4811(2) ("ECRA"); (ii) smuggling of firearms to Haiti, in violation of 18 U.S.C. § 554(a); and (iii) conspiracy to violate ECRA, in violation of 18 U.S.C. § 371. If convicted, Defendant faces a possible maximum

statutory sentence of 20 years in prison on the ECRA charge, 10 years in prison on the smuggling charge, and up to 5 years on the conspiracy charge.

2.      The Government asserts that it is entitled to a rebuttable presumption that detention is warranted because the alleged offenses are felonies that involve the possession or use of firearms, destructive devices, or other dangerous weapons, pursuant to 18 U.S.C. § 3142(f)(1)(E). Defendant did not object to the application of the presumption nor did Defendant present any evidence to rebut the presumption.  In any event, even in the absence of the presumption, the undersigned finds that the Government has met its burden of showing by clear and convincing evidence that Defendant is a danger to others and the community.

3.      The weight of the Government's evidence against Defendant is substantial.  At the detention hearing, the Government proffered evidence and the law enforcement agent testified that:

a.      400 Mawozo is a Haitian criminal organization that operates east of Port-au-Prince, Haiti.  On or about October 16, 2021, 400 Mawozo kidnapped 16 U.S. citizens who were traveling near Port au Prince, including five children.

b.      Coconspirator 1 is a Haitian national and a leader of 400 Mawozo.  Coconspirator 1 is incarcerated, but still serves as a leader in the organization and directs operations from prison using an unmonitored cellular phone.

c.      Individual 2 is a Haitian national and a leader of 400 Mawozo.  Starting around October 18, 2021, Individual 2 appeared on social media videos, including on YouTube and Facebook, stated his name, and declared himself to be a leader of 400 Mawozo.  More specifically, on October 22, 2021, Individual 2 appeared on a Facebook video from a local

funeral for gang members who had been killed and announced his intention to kill the American hostages if he did not receive the ransom money ($1 million per hostage).

d.  Defendant is a U.S. citizen, born in Haiti.  Defendant resides in Florida and, as described below, is a self-professed member of 400 Mawozo.  As further described below, Defendant and her co-defendants purchased weapons and ammunition in the United States and shipped them to 400 Mawozo in Haiti.  Defendant used straw purchasers and falsified ATF paperwork to purchase these firearms and ammunition in the U.S., which she and her co-defendants then smuggled into Haiti in shipping barrels.

e.  During the investigation, law enforcement searched Defendant's cell phone pursuant to a search warrant.  The search revealed numerous texts and messages between Defendant, Coconspirator 1, and Individual 2.  In these communications, Defendant pledged allegiance to 400 Mawozo.  For example, in an October 19, 2021 text to Coconspirator 1, Defendant stated on WhatsApp (in Creole): "Don't worry about it, stay calm.  You know we are 400 Mawozo and we are strong.  Keep a cool head."  On the same date, Defendant sent an audio file to Coconspirator 1 on WhatsApp (in Creole) stating, "We are snakes.  We slither to get where we are going.  They would be shocked to see Mawozo invade Miami."  These conversations demonstrate Defendant's leadership role in 400 Mawozo and her direct access to its leaders, Coconspirator 1 and Individual 2. Additionally, Defendant's statement that "[t]hey would be shocked to see Mawozo invade Miami" confirms Defendant's involvement with the 400 Mawozo in South Florida.

f.  According to call data records obtained during the investigation, Defendant was in regular contact with Coconspirator 1 and Individual 2.  For example, between

approximately August 1, 2021 and October 21, 2021, Defendant used her cell phone to communicate with Coconspirator 1 on 88 occasions, 20 of those instances occurring between October 16 and October 21, 2021 (the time of the kidnappings). Moreover, between August and October 21, 2021, Defendant communicated with Coconspirator 1 on 62 out of 71 days. Additionally, between August 1, 2021 and October 11, 2021, Defendant used her cell phone to communicate with Individual 2 on 261 occasions.

g.      Law enforcement's search of Defendant's cell phone and call data records reveal that Defendant received specifications for the types of weapons and ammunition that Coconspirator 1 wanted Defendant to obtain and send to Haiti for use by 400 Mawozo. For example, on October 10, 2021, Coconspirator 1 sent Defendant WhatsApp audio and text messages directing Defendant to purchase a Ruger firearm/ammunition. Coconspirator 1 stated, "Is it on the butt of the firearm or the butt of the bullet? I got the firearm, but I need the bullets. I saw the firearm on a social media platform. If you have the firearm, then I need to have that bullet for the firearm. Please send me the video." After Defendant responded, "On the butt of the bullet, baby[,]" Coconspirator 1 replied via text message, "5.7 X 28 Ruger 57 Prescott az U S A Ruger 57."

h.      Similarly, on or about October 4, 2021, Defendant sent Coconspirator 1 a text message saying, "I got the bullets," and then sent Coconspirator 1 a photograph of a Springfield M1A rifle.

i.      To carry out the scheme, Defendant and her co-defendants completed false ATF 4473 Forms attesting that they were the "actual buyers" of the firearms and that they were

4

not buying the firearms for another person.  In fact, however, they intended to ship and did ship the firearms to Haiti for use by 400 Mawozo.

j.      On or about October 6, 2021, Defendant sent a text message to co-defendant Walder St. Louis directing co-defendant St. Louis to purchase two AK-47s and one AR-15 firearm from "Patrick" (last name unknown), who law enforcement believes is associated with a pawn shop (a licensed firearms dealer) in Miami, Florida.  Approximately five hours later, from inside the pawn shop, co-defendant St. Louis sent Defendant four pictures of firearms. According to receipts from the pawn shop and independent ATF records, on October 6, 2021, co-defendant St. Louis purchased 3 weapons, at a cost of $2,855.  Later, on October 11, 2021, Defendant sent co-defendant St. Louis a photograph of a Western Union receipt from Haiti confirming that $2,500 had been wired to co-defendant St. Louis's account. Approximately 55 minutes after the transmission of the above receipt, co-defendant St. Louis sent an audio message to Defendant stating, "I sent two barrels and I have other firearms inside of it.  They sent the barrels for $400 dollars . . . the barrels went to Laboule 16."  According to the law enforcement agent, Laboule 16 is a location south of Port au Prince.

k.      Photographs seized from Defendant's cell phone show barrels, likely containing the above-described weapons to be shipped to Haiti.  The photographs, which were introduced into evidence, are date-stamped October 9, 2021, October 11, 2021 and October 19, 2021. *See* Gov. Exh. 1.   According to the law enforcement agent, the photos show that the firearms were wrapped in garbage bags, loaded into large multi-gallon drums/barrels, and

then covered with various innocuous products on top, such as clothes, shoes, and Gatorade, to conceal the weapons for smuggling them out of the U.S. into Haiti.

l.      After her arrest, Defendant handwrote a 3-page letter admitting, among other things, that: (i) she was a member of 400 Mawozo; (ii) she purchased weapons and ammunition for 400 Mawozo; (iii) she smuggled weapons and ammunition from the United States to Haiti for 400 Mawozo; and (iv) she received instructions and money from Haiti to purchase the weapons and ammunition.

4.      Defendant's history and personal characteristics also support pretrial detention. The Court incorporates and makes part of this Order the facts contained in the PSR. Defendant has substantial ties to Haiti. For example, Defendant's father resides in Haiti and Defendant travels frequently to Haiti. Moreover, Defendant's allegiance and leadership role in 400 Mawozo, combined with Defendant's direct access to the gang's leadership, show Defendant's high-level role in 400 Mawozo. The nature of the alleged offenses reflects that Defendant has easy access to cash, weapons, and ammunition. Defendant and her co-defendants obtained weapons and ammunition in the United States and smuggled these to the 400 Mawozo in Haiti, using straw purchasers and falsified ATF paperwork. As well, Defendant's statements confirm her allegiance to this violent gang and her enthusiasm for the possibility of causing harm in the Miami area. In her own words, Plaintiff said, "We are snakes. We slither to get where we are going. They would be shocked to see Mawozo invade Miami." Lastly, and most importantly, Defendant admitted her involvement with Mawozo and her role in the instant offenses in a post-arrest handwritten statement. All combined, these facts lead the undersigned to conclude that no condition or combinations of conditions suffice to guarantee the safety of others or the community.

6

Based on the above findings of fact, the nature of the charged offenses, and the overall weight of the evidence, the Court finds by clear and convincing evidence that Defendant poses a danger to the community. The Court makes no finding on the Defendant's risk of flight given the overwhelming evidence that Defendant poses a clear danger to others and the community.

Accordingly, the Court hereby directs that:

a. Defendant be detained without bond;

b. Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

c. Defendant be afforded reasonable opportunity for private consultation with her counsel;

d. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined, deliver the defendant to a United States Marshal for the purpose of appearance in connection with court proceedings.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, on November 5, 2021.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc:   Pretrial Services
      U.S. Marshals Service
      All counsel of record

7

🖎 AO 94  (Rev. 8/97) Commitment to Another District

# UNITED STATES DISTRICT COURT

| SOUTHERN | District of | FLORIDA |
|---|---|---|

| UNITED STATES OF AMERICA | COMMITMENT TO ANOTHER |
| vs. | DISTRICT |
| Eliande Tunis | |

| DOCKET NUMBER | MAGISTRATE JUDGE CASE NUMBER |
|---|---|
| District of Arrest | District of Offense | District of Arrest SOUTHERN DISTRICT OF FLORIDA | District of Offense |
| District of Columbia | | | 21-MJ-6598-AOV |

**CHARGES AGAINST THE DEFENDANT ARE BASED UPON AN**

Indictment  ☐ Information  ☒ Complaint  ☐ PETITION

**charging a violation of**   18 U.S.C. 371

**DISTRICT OF OFFENSE:**

DISTRICT OF COLUMBIA

**CURRENT BOND STATUS:**

☐ Bail fixed at                                         and conditions were not met
☒ Government moved for detention and defendant detained after hearing in District of Arrest
☐ Government moved for detention and defendant detained pending detention hearing in District of Offense
☐ Other (specify)

**Representation:**  ☒ Retained Own Counsel     ☐ Federal Defender Organization     ☐ CJA Attorney     ☐ None

**Interpreter Required?**  ☒ No          ☐ Yes     Language:  ENGLISH

**SOUTHERN DISTRICT OF FLORIDA**

TO: THE UNITED STATES MARSHAL
    You are hereby commanded to take custody of the above named defendant and to transport that defendant with a certified copy of this commitment forthwith to the district of offense as specified above and there deliver the defendant to the United States Marshal for that District or to some other officer authorized to receive the defendant.

| Nov 8, 2021 | *Alicia O. Valle* |
|---|---|
| Date | United States Judge or Magistrate Judge |

| **RETURN** |
|---|

This commitment was received and executed as follows:

| DATE COMMITMENT ORDER RECEIVED | PLACE OF COMMITMENT | DATE DEFENDANT COMMITTED |
|---|---|---|
| DATE | UNITED STATES MARSHAL | (BY) DEPUTY MARSHAL |